Nash. J.
 

 I concur in the opinion of his Honor, the Chief Justice. The trust, disclosed in the answer, is one sanctioned by the laws of the' State, agreeable to its policy, and ought to be enforced by a Court of Equity. The defendant submits to execute the trust under the direction* of the Court; and those directions are set forth in the opinion of his Honor with sufficient clearness. Another question has been argued in this case, as to the true and proper construction of the Act of 1S30. ch.
 
 9,
 
 sec. 3. Rev Stat. Ill, sec. 59. as applicable to the execution of such trusts as are set forth in this case. I give no opinion on the point discussed, as I do not think it arises here.
 

 Pearson, J.
 

 The slaves were not given
 
 to the
 
 defendant for his own use, but upon a trust. If the trust be unlawful, it is void, and they belong to the plaintiffs.
 

 What is the trust? It is admitted tobe a secret one. The defendant swears, he did not disclose it to any one, until ten years after the death of his testatrix, when he told it to his counsel, who drew his answer, and the pleadings show, he filed a demurrer and objected to making it known. It is admitted to be a secret trust by
 
 design.
 
 The answer states, that the testatrix was distinctly told, that her purpose of emancipating the slaves might be accomplished by expressing the trust in her will and having them set free
 
 “according to law”
 
 or by making her wish known to some person, in whom she had confidence, and reposing in him the trust of transporting the slaves to Liberia, or some other free country, where they could enjoy their freedomi She elected the latter mode.
 

 
 *387
 
 Secrecy' is ,a badge of fraud, and this trust, being a secret one by design, must be received with suspicion.
 

 The admissions of the answer leave no doubt in my mind, that the trust was, that the defendant would transport the slaves to a free country', so as to give them their freedom in that way, without complying with the provisions of the statute. If it was the intention to emancipate according to the statute, what reason can be assigned for not expressing the trust in the will ? The defendant can suggest none. The testatrix knew such a trust was lawful ; and the preference she gave to the secret trust, sat*isfies'me, either that it was her intention, that the slaves should remain in this State as free negroes — which is denied by the answer — or that they should be carried to a free country' and in that way set free, without giving the bonds required by law. The latter, the defendant says, was
 
 the trust,
 
 and that he would have executed “said trust, by transporting the slaves to Liberia soon after the death of his testatrix, but for the litigation in which he has been involved.”
 

 Is such a trust lawful, laying aside the secrecy ahd supposing it.inserted in the will? This depends upon the construction of the act of 1830. It provides, “that any inhabitant of this State may emancipate his slaves by giving bond of 81000 for each slave, with two sufficient securities, that the slave will leave the State and never return.” This is the security taken by the public from the master. A security is also taken from the slave, by the provision, “that his emancipation shall be on condition, that he will never return, if he does, he is to be sold as a slave and the proceeds of the sale shall belong to the informer and the Wardens of the County.” The act further provides, “that
 
 no slave shall be set free, but according to the provisions of tliis Act”
 

 
 *388
 
 The intention of the law-makers should be ascertained, and the Courts should then see that this intention is carried into effect and in no wise evaded
 

 The legislature intended, that slaves should not be emancipated, unless the public had both securities, that they would leave the State, and never return : the obvious policy being, not so much to get clear of the slaves, as to keep clear of free negroes. Here, then, is a law, providing that any person may emancipate his slaves
 
 vpon certain conditions.
 
 Does not this, as a matter of coursq, make unlawful a mode of emancipation, without complying with those conditions, and without giving the two securities required ? Did the legislature do a vain and foolish thing ? Is this the language of the law? You may emancipate your slave by giving a bond of $1000, and upon condition, that, if the fteed man comes back, he shall be. sold as a slave ; but you
 
 may also eman~ cipote him.
 
 simply by sending him to a free country, without the bond or the condition. If so, the latter mode will always be adopted. The master will prefer not to incur liability, and if the slave returns, he will belong to his former owner; for the title has not been divested, or if, by a forced construction of the statutes concerning free negroes, the slave, is considered as a free, negro migrating into the State, he will not be liable to be sold as a slave, but will be hired out. for ten years, unless he leaves the State in twenty days ; and in the case of females the children would be free negroes. The act of 1830 seems to have been drawm with much, care, and the fact of requiring the. security of a bond and the condition necessarily renders any o'her mode of emancipation, in which both or either of these securities arc not given, repugnant and unlawful. If it had been the intention still to allow the mode of emancipation, by simply transporting the slave, this repugnance could only have been avoided, by providing, that, if the slave returned, the master should be
 
 *389
 
 liable to a higher penalty, say §2000, and the slave to a stronger condition — say7 thirty nine lashes, in addition to his being sold as a slave. Without some such provision the act of 1830 would be nugatory and lie as a dead letter upon the statute book. For, why7 should it be resorted to, as the other mode is the plainest and is free from all liability7? No such provision is contained in the statute, and from abundance of caution, there is an express provision, that slaves shall be emancipated in
 
 no other way.
 

 I ask, then, can it be possible, that in spite of this repugnance and in the face of this provision, a trust, by which slaves are to be set free by sending them out of the State without giving the securities required, is lawful ? It is said, this mode has been frequently pursued since the act of 1830. That maybe true. If so, it is time attention was called to it, and the Couits should not countenance so palpable an evasion of an important law, by recognising, under any circumstances, those slaves as free persons, who have been sent out of the State since its enactment, without a compliance with its provisions.
 

 Again, it is said, this is not an open question, but is settled by the case of
 
 Cameron
 
 v.
 
 the Commissioners of Raleigh,
 
 1 Ire. Eq. 436, the opinion delivered in this case, when it was before the Court upon the demurrer, 3 Ire. Eq. 338, and the case of
 
 Cox
 
 v.
 
 Williams,
 
 4 Ire. Eq. 17.
 

 If the point had been directly decided in those cases, as the decision would make the act of 1830 a dead letter, I should hesitate long before adopting the conclusion, that this Court was bound to consider the question settled. But, the point was not directly decided in either case, and the attention of the Court not called to it. In the case of
 
 Cameron,
 
 there was an expressed trust, and the slaves had been sent to Liberia and settled there
 
 before the bill was filed;
 
 and the question was, to whom a certain fund belonged. The Court,
 
 assuming that the slaves had been duly
 
 emancipated, say, “the policy of our law never did
 
 *390
 
 forbid the removal of slaves to a free country, in order to their residence there as free people, and the act of 1830 provides for their emancipation, so that they beremoved( and
 
 kept
 
 removed, without the State.” The question was not made, whether the mode of sending off slaves without giving the bond and subjecting them
 
 to the
 
 condition, was not unlawful, as evading the provisions of the act of 1830» and, in fact, directly in violation of it. It is not intimated, how the slaves are to be
 
 ‘'kept removed
 
 without the State.” So, in this case upon the demurrer* the bill charged, that the slaves were given to the defendant, “in trust for their own benefit, and for the purpose of their enjoying a qualified freedom in this State.” The decision is, that, if the trust be as charged and admitted by
 
 the
 
 demurrer, it is unlawful and void. It is true, in discussing t.he question, the Chief Justice says, among other things, “since the act of 1830, it is not unlawful to bequeath or convey slaves for the purpose of being removed out of the State, and
 
 kept away
 
 from this State. If, in truth, the trust was to send them out of the State, and the defendant intends to do so, and will enter into the
 
 obligations, which the law requires,
 
 that they shall not return, let him so answer.” The question was not before the Court, and if any inference is to be drawn from the opinicn of the Chief Justice, it is. that he considered the modj? of emancipating, by simply sending slaves to a free country, unlawful, as evading and violating the act of 1830; for, he says, “bonds must be given as the law requires,” and evidently had in his mind “a trust” to emancipate according to the statute, and not a trust to transport slaves to a free country and thereby set them free— which is the trust set up in the answer.
 

 In the case of
 
 Cox,
 
 the bequest is of slaves to the Colonization Society, upon condition, that the slaves are to be sent to Liberia. The decision is, that such a trust is lawful. In what manner the trust, was to be executed
 
 *391
 
 was not before the Court. So, there has been no decision, that the mode of emancipation by simply sending slaves to Liberia is la’, ml since the act ot 1830; and for the reasons given, I think it is clearly unlawful.
 

 It is urged for the defendant, that, admitting the trust, as originally declared, to be unlawful, he may claim the .aid of this Court "to remodel it.” and make it a trust to emancipate under the provisions of the act of 1830, and he submits to act under the directions of this Court and to give bond, &c.
 

 The defendant asks aid, with an ill grace, after having concocted an unlawful trust, and after his testatrix lias made her election, to declaro an unlawful instead of a lawful trust. I find no ground, upon which to remodel the trust, and
 
 make- it the very
 
 trust, which she refused to insert in her will. If this Court had the power to do so, to exercise it would be to give encouragement to secret unlawful trusts, by allowing them to be made lawful in case of detection. But this Court has not the power. It would violate the wish of the testatrix, and be making a trust for her in place of the one she chose to make for herself, and it would violate the rights of the plaintiffs. They have a vested right to the slaves, if the trust be unlawful and void. Is it in the power of any Court to deprive them of it ? In the cases of
 
 Cameron
 
 and of Cox, there was an open express trust to cause the slaves to be sent to Africa. The general words imply, that it was to be executed as the law requires. The fact, that it has not been legally executed, does not render the trust void, although the slaves cannot be treated as free persons until the law is complied with. In this case, the trust is secret, and the implication, that it was to be executed as the law requires, is repelled by the positive refusal of the testatrix to insert it in the will.
 

 Per Curiam.
 

 Decree for emancipation of the slaves upon the defendant’s complying with the requisitions of the law.